FILED
May 11 2018, 8:10 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Civil Appeals Section Chief

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffrey M. Heinzmann
Heinzmann Law Office, LLC
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant/Cross-Appellee-Plaintiff,*

v.

Beth A. Neff,

*Appellee/Cross-Appellant-Defendant.*

May 11, 2018

Court of Appeals Case No.
18A02-1708-IF-1933

Appeal from the Delaware Circuit
Court

The Honorable Marianne L.
Vorhees, Judge

Trial Court Cause No.
18C01-1707-IF-15

**Mathias, Judge.**

On July 12, 2017, the State filed a complaint for removal from office against Yorktown clerk-treasurer Beth A. Neff ("Neff") for neglecting to perform several of her official statutory duties. Neff filed a motion to dismiss the

complaint, which the Delaware Circuit Court denied. After a summary evidentiary proceeding, the trial court entered findings of fact and conclusions of law and entered judgment in Neff's favor and against removal from office.

[2] The State appeals the entry of judgment on the merits in favor of Neff. We reverse and remand. Neff also cross-appeals the trial court's decision to deny her motion to dismiss, and on this issue, we affirm.

## Facts and Procedural History

[3] Neff was elected to serve as the clerk-treasurer for the town of Yorktown (the "Town"), Indiana in 2007, and she has served in that capacity ever since. In 2013, the State Board of Accounts ("SBA") performed an examination and audit of Yorktown's 2012 financial records kept by Neff. On December 5, 2013, SBA Field Examiner Mike Wade ("Wade")[1] compiled a report of his findings following the examination. Wade discovered several errors with the Town's records including that: (1) Neff had failed to reconcile Yorktown's accounts for all of 2012; and (2) Yorktown's Park One Wastewater Utility account was overdrawn by $140,943. As a result, Yorktown's 2012 annual report submitted to the State did not properly reflect the actual financial activity of the Town.

[4] On November 14, 2013, prior to issuing the financial report, Wade and his supervisor Bill Vinson ("Vinson") met with Neff, town council president Robert

---

[1] Wade's first name is Curtis, but he testified during the hearing that he preferred to be called Mike. Tr. Vol. 2, p. 49.

Ratchford, and town manager Pete Olson to explain the issues. Wade and Vinson discussed the errors with Neff and also directed her to the applicable sections of the Indiana Code and the State Board of Accounts Manual—the Accounting Uniform Compliance Guidelines Manual for Cities and Towns (the "Manual")—in order to rectify the errors and avoid making them again in the future. Vinson and Wade also explained audit adjustments totaling $57,752.92 that Neff needed to correct to come into compliance with SBA standards.

[5] In 2016, Wade returned to the Town to perform an audit of the financial records kept by Neff from 2013–2015.[2] On November 10, 2016, Wade compiled and filed a report of his findings following the examination. The report states in part:

> The Town's accounting records have not been reconciled to depository balances since December 31, 2012. The accounting records contained numerous posting errors, such as transactions not being posted, receipts posted to incorrect funds, and transfer between funds' errors. In addition, as incorrect transactions were discovered, correcting transactions were recorded incorrectly.

Ex. Vol., State's Ex. 2 Financial Statements Examination Report, p. 3. Specific examples of errors that Wade's examination uncovered included: (1) the

---

[2] Vinson explained the reason for the three-year gap in audits for Yorktown during the hearing:

> The state board of accounts had lost about a third of its staff over the prior seven or eight years and we just, quite honestly, were not able to get to these audits as quickly as possible. We had the opportunity to pick up all three years and so we came to do the examination for all three years.

Tr. Vol. 2, p. 115.

Town's books had still not been properly reconciled; (2) during 2014, two transfers totaling $124,826 were posted as transfers out without a corresponding transfer in; (3) during 2015, six state distributions to the Town totaling $73,955 were not receipted to the Town's records; (4) the Town's ledger and annual financial reports for 2013, 2014, and 2015 did not include the financial activity of several Town funds; (5) five of the Town's accounts had overdrawn balances; and (6) there were over twenty accounts affected by incorrect posting errors. *See* Ex. Vol, State's Ex. 2 Supplemental Compliance Report, p. 4–5; Tr. Vol. 2, pp. 62–68; 124–25. Vinson testified that the examination uncovered so many errors that the SBA was unable to identify all of them. Tr. Vol. 2, p. 120.

[6] On October 13, 2016, prior to issuing the report, Wade and Vinson met with Neff, town council president Richard Lee ("Lee"), and town manager Pete Olson. Wade and Vinson again discussed the errors with Neff and directed her to the applicable sections in both the Indiana Code and the Manual addressing the issues. It was during this meeting that Lee first learned that the Town's books had not been properly reconciled for forty-eight consecutive months. Lee then advised Neff to get outside help in order to fix the problems. Neff suggested hiring the accounting firm Hartman Williams a couple of weeks before the November 2016 town council meeting, and the town council approved the proposal.

[7] Hartman Williams's goal was to come in and rectify the Town's books for 2011–2015 with an initial cost of $20,000 approved by the Town. Hartman

Williams's employee Donna Vinson[3] ("Donna") began working with Neff on the Town's books in November 2016. After Donna began working on the Town's books, the Town council was notified that "the problem was somewhat more substantial and significant than they thought," Tr. Vol. 2, p. 178, and the cost to remedy the problems increased.

[8] After several months, Donna was able to get the Town's 2011–2015 books reconciled to within $232[4] at a cost to the Town of over $67,000. As part of her work, Donna had to conduct a bank reconciliation for every month from January 2012 through December 2015 because they had not been performed. Moreover, Donna discovered when reviewing the Town's books that: (1) $16,190.55 of the $57,752.92 in adjustments Wade and Vinson provided to Neff in 2013 had not been corrected on the Town's records; (2) over one-hundred and fifty posting errors; (3) thirty-four of the Town's funds required adjustment; and (4) net errors totaling $346,340.82. *See generally* Ex. Vol., State's Ex. 10; Tr. Vol. 2, pp. 218–234. Donna's report filed on June 16, 2017, discussed eighteen separate findings of errors with the Town's financial records.[5]

---

[3] Donna Vinson is Bill Vinson's wife, but there is no allegation of a conflict of interest. Donna explained during the proceedings how her firm was independently hired and that she was assigned to help the Town. *See* Tr. Vol. 2, pp. 204–05.

[4] Richard Lee, the Yorktown town council president at the time, testified that the council decided it was not worth thousands of extra dollars for Donna to balance the Town's funds to $0. Tr. Vol. 2, pp. 178–79.

[5] At the time of the proceedings, Donna had entered into a new open-ended contract with the Town at a per-hour cost to reconcile the books from January 1, 2016, through the date of the hearings. Tr. Vol. 2, pp. 179–80.

[9] On July 12, 2017, the State filed a complaint for Neff's removal from office based on her alleged negligent failure to perform her statutory duties as the Town's clerk-treasurer. The three-count complaint alleged in relevant part:

### Count 1

[. . .] For the last 24 months the Defendant herein has on more than one occasion refused or neglected to perform the official duties of the Clerk-Treasurer of Yorktown in that she has failed to reconcile at least monthly the balance of public funds, as disclosed by the records of the local officers with balance statements provided by the respective depositories, all pursuant to the requirements of Indiana Code §§ 5-8-1-35(2) and 5-13-6-1(e).

### Count 2

[. . .] The Defendant herein, being a public officer, i.e. Yorktown Clerk-Treasurer during the last 24 months has failed to follow the direction of the state examiner (Indiana State Board of Accounts) in keeping the accounts of the Yorktown Clerk-Treasurer all pursuant to I.C. § 5-11-1-10, a class B infraction; [. . .]

### Count 3

[. . .] The Defendant herein being a public officer, i.e. Yorktown Clerk-Treasurer during the following 24 months, has failed to adopt and use the systems of accounting and reporting adopted by the State Board of Accounts (SBOA) all pursuant to the Accounting and Uniform Compliance Guideline Manual for Cities and Towns (SBOA Manual) as directed by the SBOA, and as such commits a class C infraction which shall result in a forfeiture of office all pursuant to I.C. 5-11-1-21. [. . .]

Appellant's App. pp. 25–28 (emphasis in original).

On July 17, 2017, Neff filed a motion to dismiss the complaint, which the trial court denied on July 27. On July 28, the trial court held a summary evidentiary proceeding on the complaint. And on August 1, the court issued an order finding that "[t]he State proved beyond a reasonable doubt that Neff failed to reconcile the Town's books for *forty-eight consecutive months*." Appellant's App. p. 13 (footnote omitted) (emphasis in original). But the court entered a judgment on the merits in favor of Neff and found that removal was not warranted because "Neff is making mistakes and not performing up to the standards expected by the State Board of Accounts for Town Clerks. This is misfeasance and not nonfeasance." *Id.* at 16. The State now appeals the trial court's decision, and Neff cross-appeals the trial court's decision denying her motion to dismiss.

## Removal from Office

Here, the trial court issued both findings of fact and conclusions of law, and very importantly, the factual findings are not in dispute. We will review the court's conclusions of law *de novo*. *Citizens Action Coalition of Ind. v. Koch*, 51 N.E.3d 236, 240 (Ind. 2016).

Article VI Sections 7 and 8 of the Indiana Constitution provide the mechanism and standards by which an officer of the State can be impeached. Section 7 states:

> All State officers shall, for crime, incapacity, or negligence, be liable to be removed from office, either by impeachment by the

House of Representatives, to be tried by the Senate, or by a joint resolution of the General Assembly; two-thirds of the members elected to each branch voting, in either case, therefor.

And Section 8 provides that "[a]ll State, county, township, and town officers, may be impeached, or removed from office, in such manner as may be prescribed by law." Our supreme court has explained that both sections should be construed together. *McComas v. Krug*, 81 Ind. 327, 333 (1882).

[13] In accordance with both constitutional provisions, our legislature enacted Indiana Code section 5-8-1-35 (the "Removal Statute") which provides that an elected official can be removed for "refusing or neglecting to perform the official duties pertaining to the officer's office." *Id.* at (a)(2). The State sought Neff's removal under this statute.

[14] The duties of a clerk-treasurer are delineated in Indiana Code section 36-5-6-6(a) which explains that a clerk-treasurer shall do the following:

> (1) Receive and care for all town money and pay the money out only on order of the town legislative body.

> (2) Keep accounts showing when and from what sources the clerk-treasurer has received town money and when and to whom the clerk-treasurer has paid out town money.

> (3) Prescribe payroll and account forms for all town offices.

> (4) Prescribe the manner in which creditors, officers, and employees shall be paid.

(5)     Manage the finances and accounts of the town and make investments of town money.

(6)     Prepare for the legislative body the budget estimates of miscellaneous revenue, financial statements, and the proposed tax rate.

(7)     Maintain custody of the town seal and the records of the legislative body.

(8)     Issue all licenses authorized by statute and collect the fees fixed by ordinance.

(9)     Serve as clerk of the legislative body by attending its meetings and recording its proceedings.

(10)    Administer oaths, take depositions, and take acknowledgment of instruments that are required by statute to be acknowledged, without charging a fee.

(11)    Serve as clerk of the town court under IC 33-35-3-2, if the judge of the court does not serve as clerk of the court or appoint a clerk of the court under IC 33-35-3-1.

(12)    Perform all other duties prescribed by statute.

[15]    The parties do not disagree that Neff failed to perform statutory duties required by her office. Rather, the parties disagree as to the level of negligence in failing to fulfill those duties necessary to remove a clerk-treasurer from office. The State argues that "nonfeasance is not a failure to complete all duties all the time, but that the total failure or neglect of a required duty may suffice."

Appellant's Br. at 15. And Neff contends that "removal must be for a failure to perform all of the duties, not for the failure to perform a specific duty or even group of duties." Appellee's Br. at 14–15. Both parties cite to the same two cases to support their respective positions.

[16]    In *State v. McRoberts*, 207 Ind. 293, 192 N.E. 428 (1934), the State sought to remove several Gibson County councilmen from office for failing to appropriate $300 in traveling expense funds for the Gibson County School Superintendent. *Id.* at 429–30. Our supreme court upheld the trial court's dismissal of the State's complaint and explained:

> Can it be said that because the council refused and neglected to make an appropriation for this one specific item that the members thereof are subject to be removed from office under the statute in question? We do not think so. It is not alleged in the petition that the appellees acted in bad faith or fraudulently when they refused to make the appropriation. This is not a case where an officer has refused and neglected to perform the official duties of his office, as, for instance, where a sheriff closes his office and remains away and refuses and neglects to discharge the duties thereof, and has no one to perform his official duties. The latter case would come squarely within the statute. In the instant case, however, there is no allegation that the county council or any member thereof has failed, refused, or neglected to perform the duties of their office, other than the refusal or neglect to make this one item of appropriation.

*Id.* at 430. The *McRoberts* court clarified the difference between malfeasance and nonfeasance and noted that the latter "is an omission to perform a required duty at all or total neglect." *Id.* It then identified two legitimate reasons why the

council may have decided against approving the travel expenditure including: (1) at the time, taxpayers across Indiana were urging county officers to cut all useless and unnecessary expenses; and (2) that it was reasonable to believe that the council believed it was not necessary to make a traveling expense appropriation for the superintendent until the expense was actually incurred. *Id.* at 431.

[17] In *State ex rel. Ayer v. Ewing*, 231 Ind. 1, 106 N.E.2d 441 (1952), the State sought to remove Ayer, a Hammond Township trustee, for neglecting to perform official duties pertaining to his office. *Id.* at 442. Specifically, the State alleged that Ayer refused to consider the request and applications of two teachers for Hammond schools unless each paid $100 to his political campaign. The *Ayer* court framed the issue as follows:

> The alleged reasons for the trustee's refusal are unimportant. The only question is: Did the trustee have a right to refuse to consider the application either with or without reasons? If he had a right to refuse to consider the application, his act in doing so cannot by any flight of the imagination be construed as refusing or neglecting to perform the official duties pertaining to his office[.]

*Id.* at 443. Our supreme court then explained that because Ayer "employed qualified teachers for all the schools in his township he performed his duties in full in that matter. It cannot be said that because he did not consider, appoint or employ relator as a teacher, he neglected or refused to perform his official duties." *Id.* The *Ayer* court noted that "in any special statutory proceedings [], all jurisdictional averments required by the statute under which the proceeding

is based must be contained in the petition or the court in which it is filed[.]" *Id.* at 446. And because the verified accusation levied against Ayer did not allege a general failure to perform official duties, the State failed to properly allege the jurisdictional facts required by statute. Accordingly, our supreme court made permanent its temporary writ prohibiting the trial court from exercising further jurisdiction. *Id.*

[18] The State argues that *McRoberts* and *Ayer* support its position that "the pervasive and continued neglect of [Neff's] duties as the financial manager of Yorktown itself fit squarely within the Removal Statute." Appellant's Br. at 17. Neff contends that the two cases stand for the proposition that a clerk-treasurer cannot be removed from office for acts of misfeasance, and that nonfeasance necessary to justify removal must be a total neglect to perform *all* duties. The Removal Statute states, "refusing or neglecting to perform the official duties pertaining to the officer's office" can constitute removal. I.C. § 5-8-1-35(a)(2). And we do not read our supreme court's holdings in *McRoberts* or *Ayer* to require the abandonment of *all* of an officer's statutory duties in order to justify removal from office.

[19] Although we recognize several alleged errors committed by Neff during her time as clerk-treasurer, specifically from 2011–2015, we focus on the allegations in Count I of the State's complaint which alleged that Neff had "failed to reconcile at least monthly the balance of public funds," Appellant's App. p. 25,

for a period of forty-eight consecutive months.[6] Indiana Code section 36-5-6-6(12) requires a clerk-treasurer to "[p]erform all other duties prescribed by statute." And one of those statutory duties is to "reconcile at least monthly the balance of public funds, as disclosed by the records of the local officers, with the balance statements provided by the respective depositories." Ind. Code § 5-13-6-1(e). Moreover, section 2-7 of the Manual states that "[t]he record balance at the end of every month shall be reconciled with the bank balance." Ex. Vol., State's Ex. 11.

[20] Neff was aware of her statutory duty to reconcile the Town's books at the end of each month. Wade's report to Neff and the Town on the 2012 financials noted, "Bank reconciliations were not complete at the time the Annual Report was filed." Ex. Vol., State's Ex. 1, p. 24. During the exit interview, Wade went over the bank reconciliation issue with Neff, and he testified that she "[s]eemed to understand," Tr. Vol. 2, p. 60, what he was saying and what he was showing her. Wade also pointed Neff to the applicable Indiana Code sections and Manual sections to prevent similar errors in the future.

[21] Wade's 2016 report on the Town's financial records for 2013–2015 notes, "The Town's accounting records have not been reconciled to depository balances since December 31, 2012." Ex. Vol, State's Ex. 2 Financial Statements

---

[6] We recognize that the State's complaint alleged Neff's failure for the preceding twenty-four months because of a statute of limitations concern. *See* I.C. 34-28-5-1(c)(2). However, for the purposes of our discussion, we focus on Neff's failure to reconcile the books as a whole once she was made aware of her error.

Examination Report, p. 3. When Wade was asked about this during the hearing, the following testimony took place:

> [Prosecutor]: The second thing that you note there, that's in bold, is bank account reconciliations?
>
> [Wade]: Right.
>
> [Prosecutor]: That's the same problem that occurred in 2012?
>
> [Wade]: Yes.
>
> [Prosecutor]: And, again, it continued throughout 2013?
>
> [Wade]: Yes.
>
> [Prosecutor]: 2014?
>
> [Wade]: Yes.
>
> [Prosecutor]: 2015[?]
>
> [Wade]: Yes.
>
> [Prosecutor]: Again, same issues as noted in the 2012 exit interview?
>
> [Wade]: Yes.

[Prosecutor]: At the end of 2015, do you know how many continuing or consecutive months the books had not been reconciled?

[Wade]: Thirty-six.

[Prosecutor]: So, 36 consecutive months, the books of Yorktown were not reconciled?

[Wade]: Correct.

Tr. Vol. 2, pp. 65–66. Vinson testified regarding Wade's findings and explained, "Well, we look at the bank reconciliation that the unit is to perform and [Wade] went through all 36 months of the examination period, and the attempt to reconcile never occurred. I mean, the actual reconciling of the records to the bank never occurred through any of those months." *Id.* at 126. Accountant Donna Vinson also discovered in her examination of the Town's records that bank reconciliations had not been completed for forty-eight consecutive months. *Id.* at 213–14.

[22] Unlike the councilmen in *McRoberts* or the trustee in *Ayer*, Neff's failure to reconcile the Town's books was not an isolated incident explainable as a discretionary function, but rather represented a total omission to perform a required statutory duty for forty-eight straight months. *See McRoberts*, 192 N.E. at 430. Moreover, distinguished from *McRoberts*, Neff did not have any potential legitimate reason for neglecting to properly reconcile the Town's financial records on a monthly basis. And distinguished from *Ayer*, Neff did not

have the discretion not to reconcile the Town's financial records with or without reason. Thus, we reject Neff's reading of *McRoberts* and *Ayer* and hold that an officeholder like Neff need not abandon each and every statutory duty before removal from office may be warranted.

[23] The trial court here stated in its findings "[t]he State proved beyond a reasonable doubt that Neff failed to reconcile the Town's books for *forty-eight consecutive months*." Appellant's App. p. 13 (footnote omitted) (emphasis in original).[7] Importantly, this is *not* a discretionary duty; rather this is a statutorily required official duty for the clerk-treasurer of a town. *See* I.C. § 5-13-6-1(e).[8] And a failure to reconcile the Town's financial records for forty-eight straight months is the precise egregious failure to exercise a statutory duty that our supreme court identified in *McRoberts* and *Ayer*. The potential effect of Neff's inaction was explained by Donna during the hearing:

> [I]n order to meet statutory requirements for expending funds, you have to know how much money you have in the funds. If the fund doesn't have any money, then the statute prohibits more

---

[7] We take this opportunity to agree with the State and hold that due to the quasi-criminal nature of the removal proceedings, the proper standard for a trial court in finding its facts in these situations is for clear and convincing evidence and not beyond a reasonable doubt. *See, e.g., Tucker v. Marion County Dept. of Public Welfare*, 408 N.E.2d 814 (Ind. Ct. App. 1980); *see also Matter of Boso*, 231 S.E.2d 715, 718 (W. Va. 1977) (quotation and citation omitted); *State v. Manning*, 259 N.W. 213, 216 (Iowa 1935); *McMillan v. Diehl*, 190 N.E. 567, 568 (Ohio 1934). But this had no effect on the outcome of the case before us because the underlying facts are not in dispute, and the trial court still found the higher threshold was met.

[8] We reject Neff's argument that she did not commit nonfeasance because she was attempting to reconcile the books but consistently made errors. *See* Appellee's Br. at 17–18. Neff was instructed by Wade and Davis at their exit meeting in 2013 on how to properly perform reconciliations. Despite any attempt, Neff's errors caused the Town's books to not be properly reconciled for a period of forty-eight consecutive months. Neff's duty as clerk-treasurer required her to properly reconcile the books "at least monthly." I.C. 5-13-6-1(e).

money from being expended. So, if you've got errors that you haven't identified, then you don't really know what's in those funds. And without that, then you can't make decisions about whether or not, the clerk-treasurer's responsibility is not spending money if there's no money there to spend. The town council's responsibility is to make decisions regarding how the town's going to use their money. If they don't know exactly what's there, then they're not making decisions based on good information. The other, the other thing that comes into play is that tax rates are, one of the things that goes into the budgetary process is, what the June 30 balances are for a unit of government for those property tax, or funds that receive property taxes. If you are putting down that June 30 balance and it's not correct because you've got an accumulation of errors, then that's going to affect your tax rate. Either by raising it too much, if you are showing a lower balance than you really have, or reducing it by not, by showing more than you have in the fund.

Tr. Vol. 2, pp. 220–21.

[24] While Neff's actions may not rise to the level of the hypothetical provided by the *McRoberts* court "where a sheriff closes his office and remains away and refuses and neglects to discharge the duties thereof," 192 N.E. at 430, she neglected to perform a critical, official, and mandatory duty of her office for an extended period of time. Therefore, we hold that Neff's failure, over a period of years, to perform a critical, official and mandatory duty for a clerk-treasurer falls squarely within the confines of Article VI Sections 7 and 8 of the Indiana Constitution and our legislature's response via the Removal Statute.

## Neff's Cross-Appeal

Neff also cross-appeals arguing that the trial court erred when it denied her motion to dismiss the State's complaint against her. Appellee's Br. at 23–27; Appellee's Reply Br. at 6–8. We review a trial court's denial to grant or a deny a motion to dismiss for an abuse of discretion. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017).

Due to the summary nature of Neff's proceeding, the State here had to meet a higher standard of pleading in its complaint. *See Ayer*, 106 N.E.2d at 446. The State's complaint specifically alleged several ways in which Neff neglected to perform her duties as clerk-treasurer including: (1) her failure to reconcile monthly the Town's financial accounts for twenty-four months; (2) eight detailed examples of Neff's failure to use and follow the Manual; and (3) five detailed examples of Neff's failure to follow and implement the recommendations of the SBA. *See* Appellant's App. pp. 25–28; *Cf. Ayer*, 106 N.E.2d at 442 (the State only alleged a single failure of Ayer's official duties). We agree with the trial court that the State's complaint sufficiently alleged specific facts necessary to fall under the trial court's jurisdiction under Indiana Code section 5-8-1-35(a)(2). *See* Appellant's App. p. 78. Thus, the trial court did not abuse its discretion when it denied Neff's motion to dismiss.

## Conclusion

The Removal Statute does not require a town's clerk-treasurer to refuse or neglect to perform each and every official duty before removal from office is

warranted. And based on the facts and circumstances before us, because Neff neglected to properly reconcile the Town's financial records for forty-eight consecutive months, the trial court erred when it determined that her removal was not warranted under the Constitution of Indiana and the Removal Statute. Accordingly, we reverse the trial court's decision not to remove Neff from office, and we remand for proceedings consistent with this opinion. On Neff's cross-appeal, we affirm the trial court's decision to deny Neff's motion to dismiss.

[28] Reversed in part, affirmed in part, and remanded.

Riley, J., and May, J., concur.