



FILED

Feb 27 2019, 3:21 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-IF-00478

## State of Indiana,

*Appellant/Cross-Appellee (Plaintiff below),*

—v—

## Beth A. Neff,

*Appellee/Cross-Appellant (Defendant below).*

---

Argued: September 27, 2018 | Decided: February 27, 2019

Appeal from the Delaware Circuit Court,
No. 18C01-1707-IF-000015
The Honorable Marianne L. Vorhees, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A02-1708-IF-01933

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

Turning to the judiciary to remove a duly-elected public official from office is a radical departure from our usual democratic process because it risks silencing the collective voice of the people, spoken in each election. As such, it is a remedy rarely sought and even more rarely granted. This appeal involves such a request by the State to remove the Town of Yorktown's Clerk-Treasurer, Beth Neff, but it does not fall within the exceptionally rare category of cases that warrant removal. Under the statute relied on by the State for this removal action, a public official may be removed from office for only a general failure to carry out his or her required duties. Because the State has not shown that Neff's failures and errors constitute such a general failure, she is not subject to removal.

# Factual and Procedural History

At all times relevant to this appeal, Beth Neff served as the elected Clerk-Treasurer of the Town of Yorktown and was responsible for, among other things, managing and keeping account of Yorktown's finances. In connection with these responsibilities, her office was subject to financial examination by the Indiana State Board of Accounts (the "SBOA"). Two such examinations by the SBOA, along with actions taken in response to those examinations, laid the foundation for this proceeding.

The first examination related to the 2012 calendar year, and the SBOA uncovered several deficiencies in Yorktown's financial records and processes. The deficiencies included improper bank account reconciliations, errors in Yorktown's report of its yearly financial activities, and a financial account showing a negative cash balance of approximately $140,000. In a November 2013 exit conference, the SBOA discussed the results of its examination with Neff, the Yorktown Town Council President, and the Yorktown Town Manager, and it provided some direction to Neff on avoiding future deficiencies.

The second examination related to the 2013, 2014, and 2015 calendar years, and the SBOA found that the deficiencies noted in the 2012 examination continued into 2013, 2014, and 2015. In fact, the SBOA Audit

Manager who oversaw both examinations testified that Yorktown's financial records worsened after the first examination, and, as a practical matter, there were too many errors to identify. In an October 2016 exit conference, the SBOA again discussed the results of its examination with Neff, the Yorktown Town Council President, and the Yorktown Town Manager.

In response to the second examination, the Yorktown Town Council approved hiring an outside accounting firm to review Yorktown's books and to complete bank account reconciliations for the 2012, 2013, 2014, and 2015 calendar years. The accounting firm's review revealed over 150 errors that, without considering whether each error increased or decreased the balance of Yorktown's books, totaled approximately $3,090,000. The net effect of these errors was that Yorktown's books were understated by approximately $346,000. After completing the bank account reconciliations, the accounting firm was able to identify and propose adjustments to Yorktown's books to reduce the errors to just near $250. Yorktown initially contracted to spend $20,000 for this work but ultimately spent almost $70,000 after discovering the full extent of the work required.

On July 12, 2017, about a month after the outside accounting firm completed its work reviewing Yorktown's 2012, 2013, 2014, and 2015 books, the State, by the Delaware County prosecuting attorney, filed its Complaint for Removal from Office against Neff. Relying on Indiana Code section 5-8-1-35 (the "Removal Statute"), the State sought Neff's removal for her alleged "refus[al] or neglect[], on numerous occasions, to perform the official duties pertaining to the office of the Yorktown Clerk-Treasurer." Appellant's App. Vol. 2, p. 23, ¶4. The State brought three specific counts alleging that Neff failed to: (1) complete monthly accounting reconciliations; (2) follow the directions of the SBOA, the relevant state examiner; and (3) use the accounting and financial reporting systems adopted by the SBOA in its Accounting and Uniform Compliance Guideline Manual for Cities and Towns (the "SBOA Manual"). Neff sought dismissal of the complaint pursuant to Trial Rule 12(B)(6), but the trial court denied her motion.

Sixteen days after the State filed its Complaint and within the Removal Statute's twenty-day deadline, the trial court held a summary hearing on the merits. *See* Ind. Code § 5-8-1-35(a) (2017). A few days later, the trial court issued its written findings of fact, conclusions of law, and judgment in favor of Neff. It found that "Neff failed to reconcile [Yorktown's] books for **forty-eight consecutive months**[;] . . . did not follow [SBOA] directives; violated the [SBOA] Manual that should have directed her in doing her job; and committed errors that resulted in **over $3 million** in total errors affecting **over thirty accounts**." Appellant's App. Vol. 2, p. 81 (emphases in original). However, it also found that Neff was completing the other work of her office, including fulfilling her non-financial duties. *Id.* at 84. After discussing this Court's precedent interpreting the Removal Statute and applicable constitutional provisions, the trial court concluded that the Removal Statute applies in three situations: "complete failures to act, the inability to act due to mental conditions, or crimes." *Id.* Because Neff was successfully completing some of her duties as Clerk-Treasurer, the trial court concluded that she had committed misfeasance rather than nonfeasance; that is, she had not completely failed to carry out her duties. *Id.* Thus, the trial court entered judgment in her favor. *Id.*

The State appealed, arguing that the Removal Statute does not require the State to show a failure to fulfill all duties, all the time, to remove a public official. Instead, the State contended that pervasive failures involving critical duties suffice for removal. In response, Neff argued in favor of the trial court's judgment, but she also cross-appealed the trial court's denial of her motion to dismiss the complaint. The Court of Appeals agreed generally with the State and held that "an officeholder like Neff need not abandon each and every statutory duty before removal from office may be warranted." *State v. Neff*, 103 N.E.3d 635, 642 (Ind. Ct. App. 2018). It concluded that the Removal Statute applied because Neff "neglected to perform a critical, official, and mandatory duty of her office for an extended period of time." *Id.* at 643. Thus, it reversed the trial court. *Id.* at 643–44.

We granted Neff's petition to transfer to address the merits of the State's complaint for removal, thereby vacating the Court of Appeals opinion in part. *See* Ind. Appellate Rule 58(A). We summarily affirm the

portion of the Court of Appeals opinion regarding Neff's cross-appeal. *See* App. R. 58(A)(2).

## Standard of Review

The parties do not dispute the trial court's factual findings regarding what Neff did or did not do.[1] Instead, they disagree as to the standard for removing a public officer under the Indiana Constitution and the Removal Statute. This disagreement concerning the meaning of our Constitution and statutes presents us with a question of law, which we review de novo. *Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016). *See also State v. McRoberts*, 207 Ind. 293, 298–300, 192 N.E. 428, 430–31 (1934) (reviewing the trial court's legal conclusions in an appeal of a removal proceeding de novo).[2]

## Discussion and Decision

Although public officials are normally voted in and out of office, our Constitution provides ways to remove an official outside of an election in certain circumstances. *See* Ind. Const. art. 6, §§ 7–8. One such way is through a judicial proceeding pursuant to the Removal Statute. I.C. § 5-8-

---

[1] Neff erroneously characterizes the trial court's conclusion that she committed misfeasance rather than nonfeasance as a factual finding. While this conclusion was surely informed by the trial court's findings regarding Neff's actions, its determination was a conclusion of law, and we owe it no deference.

[2] Both parties contend that, because the trial court entered findings of fact and conclusions of law, the clearly erroneous standard of review applies here. However, the clearly erroneous standard in this context comes from Trial Rule 52(A). *See Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018). In at least one case, we relied on the summary nature of proceedings under the Removal Statute in stating that "the ordinary rules of civil procedure do not apply to the procedure in the trial court, and no good reason is seen why they should be made to apply here." *Beesley v. State*, 219 Ind. 239, 242, 37 N.E.2d 540, 541 (1941). Because we would review the legal issues in this appeal de novo whether we applied Trial Rule 52(A)'s clearly erroneous standard or not, *compare Horton*, 51 N.E.3d at 1157 (noting the general rule that we review legal questions de novo) *with Gittings*, 109 N.E.3d at 970 (noting the rule that, when applying Trial Rule 52(A), we review legal questions de novo), we decline to address the rule's applicability on appeal here.

1-35. But judicial removal "is an extreme and extraordinary measure, intended only for extreme and extraordinary occasions. It is fraught with seriousness and a demand for extreme caution both from the standpoint of [the person] who prefers the charge and [the person] who listens and pronounces judgment." *State ex rel. Ayer v. Ewing*, 231 Ind. 1, 16, 106 N.E.2d 441, 447 (1952) (Emmert, J., concurring) (citation omitted). As a result, we exercise restraint and caution in considering petitions for removal. *Bateman v. State*, 214 Ind. 138, 149, 14 N.E.2d 1007, 1011 (1938) (stating that removal "is a matter of serious importance" that "should be exercised with caution").

With this cautious approach in mind, we consider two related questions in this appeal. First, under what circumstances do the Indiana Constitution and the Removal Statute allow for the judicial removal of a public official? Second, should Neff have been removed? We address each question in turn.

## I. The Removal Statute applies only in limited situations.

The judiciary's removal power originates from two provisions of the Indiana Constitution. Article 6, section 7 provides, "All State officers shall, for crime, incapacity, or negligence, be liable to be removed from office, either by impeachment . . . or by a joint resolution of the General Assembly . . . ." Article 6, section 8 states more generally that "[a]ll State, county, township, and town officers, may be impeached, or removed from office, in such manner as may be prescribed by law." We have said that these two sections should be construed together. *McComas v. Krug*, 81 Ind. 327, 333 (1882). Thus, as relevant here, our Constitution provides that county, township, and town officers may be impeached, or removed from office, for crime, incapacity, or negligence in such manner as the legislature may prescribe. *Id.* (construing Article 6, sections 7 and 8).

While our Constitution lays the general foundation for removal, the Removal Statute supplies the specific mechanism applicable here by which a public official may be removed. At issue in this case is Subsection

(a)(2) of the Removal Statute which allows for removal of an officer for "refusing or neglecting to perform the official duties pertaining to the officer's office[.]" I.C. § 5-8-1-35(a)(2); *accord* I.C. § 5-8-1-35(b). When the State files an action according to the Removal Statute, the trial court must hear the case within twenty days in a summary proceeding, I.C. § 5-8-1-35(a), where "the rules of civil procedure have been held inapplicable . . . ." *State ex rel. Durham v. Marion Circuit Court*, 240 Ind. 132, 139, 162 N.E.2d 505, 508 (1959) (citing *Beesley v. State*, 219 Ind. 239, 37 N.E.2d 540 (1941); *State v. Perry Circuit Court*, 204 Ind. 673, 185 N.E. 510 (1933)). Because of the unique nature of the summary proceedings and the penalty mandated by the legislature, the Removal Statute must be strictly construed in favor of the defendant and not expanded further than the legislature has expressly provided. *Ayer*, 231 Ind. at 5–6, 106 N.E.2d at 442; *Beesley*, 219 Ind. at 244, 37 N.E.2d at 542.

Although the language of Subsection (a)(2) of the Removal Statute has remained largely unchanged since the statute's enactment in 1897, *compare* I.C. § 5-8-1-35 *with McRoberts*, 207 Ind. at 298, 192 N.E. at 430 (quoting the statute in effect without change since 1897), we have addressed it only a handful of times. From these few cases, we can glean a broad rule that Subsection (a)(2) may be invoked to remove an officer only if there has been "a general failure to perform official duties." *Ayer*, 231 Ind. at 12, 106 N.E.2d at 445. Supporting this broad rule are three more specific guidelines. **First**, as Subsection (a)(2) uses the plural "official duties" when describing a basis for removal, we have said that "a failure to perform just one duty required by law is not . . . sufficient" for removal. *Ayer*, 231 Ind. at 12, 106 N.E.2d at 445 (discussing *McRoberts*). And until proven otherwise, a defendant in a removal action is presumed to have carried out his or her duties. *See id.* at 8, 106 N.E.2d at 443; *McRoberts*, 207 Ind. at 299, 192 N.E. at 430. Therefore, the State must affirmatively show that an officer has failed to perform multiple required duties before that officer is subject to removal under the Removal Statute. **Second**, Subsection (a)(2) addresses nonfeasance rather than malfeasance or

misfeasance. [3] *Ayer*, 231 Ind. at 13, 106 N.E.2d at 446. In other words, the statute is not concerned with degrees of failure—only complete failure to perform required duties will do. **Third**, the officer's nonfeasance must have a significant impact on the day-to-day operation of the officer's office. *See Bateman*, 214 Ind. at 148–49, 14 N.E.2d at 1011 (refusing to allow removal for "inconsequential matters"). Nonfeasance of critical or essential duties of the office will necessarily have a significant impact on the day-to-day operation of the officer's office and will thus warrant removal. On the other hand, nonfeasance of a few ancillary duties will not always have an impact large enough to warrant removal. Based on this broad rule and its related guidelines, Subsection (a)(2) of the Removal Statute does not apply when an officer has done his or her job poorly or even improperly; rather, it applies when an officer has effectively not done his or her job at all. [4]

While applying the rule and guidelines in previous cases, we provided two examples of situations that did not warrant removal and one hypothetical example that would. In *McRoberts*, we held that the alleged failure of several members of the Gibson County Council to appropriate $300 for the travel expenses of the County Superintendent did not warrant removal. 207 Ind. at 295–300, 192 N.E. at 429–31. "The petition . . . specifie[d] but one instance where it [was] claimed and alleged that [the councilmen] failed to perform the duties of the office[,]" and that was not enough to remove them. *Id.* at 299, 192 N.E. at 430. In *Ayer*, we held that a Hammond Township, Spencer County, trustee could not be removed under the Removal Statute for his alleged refusal to consider the

---

[3] Nonfeasance is "[t]he failure to act when a duty to act exists." *Nonfeasance*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also McRoberts*, 207 Ind. at 298, 192 N.E. at 430 (providing a similar definition). Malfeasance is "[a] wrongful, unlawful, or dishonest act[.]" *Malfeasance*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also McRoberts*, 207 Ind. at 298, 192 N.E. at 430 (providing a similar definition). Misfeasance is "[a] lawful act performed in a wrongful manner." *Misfeasance*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Ayer*, 231 Ind. at 20, 106 N.E.2d at 449 (Emmert, J., concurring) (providing a similar definition).

[4] We note that the legislature has provided other tools that could be used to address an officer's performance when removal is not warranted. *See, e.g.*, I.C. ch. 34-27-3 (2018).

employment applications of two teachers unless they donated to his political campaign. 231 Ind. at 4–5, 8, 106 N.E.2d at 442–443. These allegations did not allege a general failure by the trustee to perform the official duties of his office, and the Removal Statute did not apply. *Id.* at 12, 106 N.E.2d at 445–46. On the other hand, in both *McRoberts* and *Ayer* we gave the same hypothetical example of when an officer would be subject to removal under the Removal Statute: "where a sheriff closes his office and remains away and refuses and neglects to discharge the duties thereof, and has no one to perform his official duties." *McRoberts*, 207 Ind. at 299, 192 N.E. at 430; *Ayer*, 231 Ind. at 12, 106 N.E.2d at 445. Such a complete abandonment of the office "would come squarely within the statute." *McRoberts*, 207 Ind. at 299, 192 N.E. at 430. These three examples provide the poles at opposite ends of the wide spectrum of errors and failures that could potentially fall within Subsection (a)(2) of the Removal Statute. This case, however, falls in between these poles and thus presents a much closer question.

## II. Neff's failures and errors do not rise to the level required for removal pursuant to the Removal Statute.

Neff's case is a particularly close call because she was undeniably ineffective in carrying out certain parts of her job. Moreover, her shoddy performance cost Yorktown tens of thousands of dollars. Given these facts it is not surprising that the local prosecutor would look to the Removal Statute to prevent further economic harm. However, a careful analysis of Neff's conduct, as it relates to her official duties as Clerk-Treasurer, demonstrates that she was still carrying out the essential functions of her job and, thus, did not generally fail to perform her official duties.

Our review of the record and of the applicable statutes reveals at least fourteen statutory duties of a town clerk-treasurer. Eleven specific duties and one catch-all provision are provided in a single section of the Indiana Code dedicated to town clerk-treasurers. This section required Neff to:

(1) Receive and care for all town money and pay the money out only on order of the town legislative body.

(2) Keep accounts showing when and from what sources the clerk-treasurer has received town money and when and to whom the clerk-treasurer has paid out town money.

(3) Prescribe payroll and account forms for all town offices.

(4) Prescribe the manner in which creditors, officers, and employees shall be paid.

(5) Manage the finances and accounts of the town and make investments of town money.

(6) Prepare for the legislative body the budget estimates of miscellaneous revenue, financial statements, and the proposed tax rate.

(7) Maintain custody of the town seal and the records of the legislative body.

(8) Issue all licenses authorized by statute and collect the fees fixed by ordinance.

(9) Serve as clerk of the legislative body by attending its meetings and recording its proceedings.

(10) Administer oaths, take depositions, and take acknowledgment of instruments that are required by statute to be acknowledged, without charging a fee.

(11) Serve as clerk of the town court under IC 33-35-3-2, if the judge of the court does not serve as clerk of the court or appoint a clerk of the court under IC 33-35-3-1.

(12) Perform all other duties prescribed by statute.

I.C. § 36-5-6-6(a) (2017). The State did not allege any deficiencies in Neff's performance of these eleven specific duties. Rather, its allegations related to three additional duties imposed on town clerk-treasurers by other statutes. *See* I.C. § 36-5-6-6(a)(12) (providing a catch-all provision incorporating other duties). These other statutes required Neff to "reconcile at least monthly the balance of public funds, as disclosed by [her records], with the balance statements provided by the respective depositories[,]" I.C. § 5-13-6-1(e), to follow the SBOA's directions, I.C. § 5-11-1-10(2), and to use the systems of accounting and financial reporting

adopted by the SBOA, I.C. § 5-11-1-21. The State focused on these final three duties in this removal proceeding.

To determine whether Neff's alleged failures to carry out her duties amounted to "a general failure to perform official duties" that would subject her to removal, we consider Neff's duties and actions in light of the three specific removal guidelines discussed above. First, an officer may be removed under the Removal Statute only for failure to perform multiple required duties. Second, the officer's failures must constitute nonfeasance rather than malfeasance or misfeasance. Third, this nonfeasance must significantly impact the day-to-day operation of the officer's office. We address each guideline below.

## A. Neff's failures and errors involved multiple duties.

The State alleged and the trial court found that Neff's failures related to multiple duties. The State alleged that Neff failed to complete monthly account reconciliations, follow the SBOA's directions, and adopt and use the systems of accounting and financial reporting required by the SBOA, and the trial court entered findings consistent with these allegations. As noted above, each of these relates to a separate duty of a town clerk-treasurer. *See* I.C. §§ 5-13-6-1(e), 5-11-1-10(2), 5-11-1-21. Thus, the first guideline in the removal analysis is met.

## B. Neff's failures and errors resulted in nonfeasance of at least one duty, but we need not determine the full extent of her nonfeasance.

While the trial court's undisputed factual findings support the conclusion that Neff committed nonfeasance of at least one specific duty, they are less clear regarding whether Neff committed nonfeasance of multiple duties. As discussed above, the State alleged, and the trial court found, that Neff failed to complete the required reconciliations, follow the SBOA's directions, and adopt and use the accounting and financial reporting systems adopted by the SBOA as required in the SBOA Manual. Because Neff failed to complete monthly accounting reconciliations when

she had a duty to do so, she committed nonfeasance of this duty. *See Nonfeasance*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining nonfeasance as "[t]he failure to act when a duty to act exists"). However, the trial court's findings regarding Neff's response to the SBOA's directions and her adoption and use of the systems required by the SBOA Manual are less clear. *Compare* Appellant's App. Vol. 2, p. 81 ("Neff did not follow [SBOA] directives [and] violated the [SBOA] Manual that should have directed her in doing her job . . . .") *with id.* at 84 ("Neff is making mistakes and not performing up to the standards expected by the [SBOA] . . . ."). If Neff wholly failed to act on **all** the SBOA's directions and failed to adopt and use **any** of the systems required by the SBOA Manual, she would have committed nonfeasance of these duties. But if Neff tried to follow the SBOA's directions and adopt and use the required systems but just could not get it all done properly, she would have committed misfeasance. *See Misfeasance*, BLACK'S LAW DICTIONARY (defining misfeasance as "[a] lawful act performed in a wrongful manner"). We need not resolve this question because, even assuming Neff committed nonfeasance in connection with each of these three duties, her nonfeasance did not have a significant impact on the operation of her office.

## C. Neff's failures and errors did not have a significant impact on the day-to-day operation of her office.

Neff's failure to carry out three of her duties did not have a significant impact on the day-to-day operation of her office because those duties were not essential to the regular functioning of her office. Those three duties—completing reconciliations, following the SBOA's directions, and adopting and using certain accounting and financial systems—dealt with maintaining proper oversight rather than ensuring the daily functioning of her office. In other words, the fact that Neff failed to reconcile accounts and follow the SBOA's directions had no impact on the ability of a Yorktown resident to pay his or her water bill. Because Neff's nonfeasance did not have a significant impact on the day-to-day operation of her office, the third guideline in the removal analysis is not met, and

she did not generally fail to perform her official duties.  Thus, she was not subject to removal.[5]

Our conclusion that Neff's failures did not significantly impact the day-to-day operation of her office is driven home by the many duties she presumably did carry out.  As an initial matter, we note that Neff holds the dual office of Clerk-Treasurer, and her duties include some related to a traditional clerk's role and others related to a traditional treasurer's role.  Despite this dual role, the State did not allege that Neff failed to perform **any** of the duties traditionally associated with a clerk, such as recording the proceedings of the town's legislative body or keeping custody of the town seal.  *See* I.C. § 36-5-6-6(a)(7), (9).  Absent any contrary findings, we must presume she fully carried out these duties.  *See Ayer*, 231 Ind. at 8, 106 N.E.2d at 443; *McRoberts*, 207 Ind. at 299, 192 N.E. at 430.  Further, the State did not allege that Neff failed to perform many of the duties traditionally associated with a treasurer, such as paying money out only on order of the town legislative body, investing the town's money, or preparing budget estimates.  *See* I.C. § 36-5-6-6(a)(1), (5), (6).  As noted above, without proof otherwise, we presume she performed these duties.  Thus, we cannot say that there was a "general failure to perform official duties."

Given all the duties she presumably carried out, Neff is more similar to the *McRoberts* councilmen and the *Ayer* trustee that were not subject to removal than the *McRoberts/Ayer* hypothetical sheriff that would have been.  Rather than effectively closing up shop like the hypothetical sheriff, Neff continued the daily operation of her office like the councilmen and trustee.  Although Neff failed to carry out some of her required duties, this did not amount to a general failure to carry out her duties as Clerk-

---

[5] We acknowledge that Yorktown spent almost $70,000 to fix the problems Neff's performance caused, and that expenditure may have had a significant impact on Yorktown's finances generally.  However, the Removal Statute and our cases require us to focus on the impact of Neff's failures on her office specifically.  Thus, while this large, unexpected expense might be significant for Yorktown residents, it cannot be significant in our analysis.

Treasurer.  As such, she is not subject to the extreme and extraordinary measure of removal.

# Conclusion

The judiciary has the power to remove a public official only in extreme situations, and we wield this power only after careful and cautious consideration.  For a public official to be removed pursuant to Subsection (a)(2) of the Removal Statute, the State must show that the official has generally failed to perform his or her official duties.  Here, Neff's failures and errors did not result in such a general failure, so the Removal Statute does not apply.  Accordingly, we affirm the trial court's judgment in favor of Neff.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE/CROSS-APPELLANT
Jeffrey M. Heinzmann
Heinzmann Law Office LLC
Fishers, Indiana