## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2019, 5:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jason M. Massaro
The Massaro Legal Group, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Ann Marie Waldron
Waldron Law
Indianapolis, Indiana

Andrea Ciobanu
Carly Roseboom
Ciobanu Law, P.C.
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Trustee of the Rose M. Luebbert Irrevocable Trust No. 1 for the Benefit of the Rose M. Luebbert Family, | May 22, 2019 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CC-2556 |
| v. | Appeal from the Hamilton Superior Court |
| Maple Family LLC, | The Honorable Steven R. Nation, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 29D01-1403-CC-2803 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Robert Luebbert, in his capacity as the trustee of a trust, sued Maple Family, LLC, in Nebraska state court. Luebbert sent the complaint to Maple Family's registered agent, but Maple Family did not respond to the lawsuit, and Luebbert obtained a default judgment in excess of $250,000. Luebbert then filed an action in Indiana, where Maple Family owns real estate, seeking to enforce the judgment. Maple Family opposed that effort, claiming that sending the complaint to its registered agent was not reasonably calculated, under the circumstances, to put Maple Family on notice of the Nebraska lawsuit. The trial court agreed with Maple Family and denied Luebbert's request for a writ of execution. Luebbert appeals. We affirm.

# Facts and Procedural History

[2] Luebbert is a Nebraska attorney and the trustee of the Rose M. Luebbert Irrevocable Trust No. 1 for the Benefit of the Rose M. Luebbert Family, a trust established by his former wife Rose, who died in 2010. On paper, this is a dispute between Luebbert, as trustee of the trust, and Maple Family, an Indiana limited liability company. Ultimately, though, it is a dispute between Luebbert and the Indiana woman he married after Rose died—Marie Elizabeth Leno— who is a member and manager of Maple Family.

[3] Luebbert began communicating with Leno through an online dating service in March 2011. Things moved quickly, and in September 2011, Luebbert and

Leno married in Mexico, where Leno owned real estate in the city of Zapopan. Things unraveled even more quickly, and Leno filed for divorce in Mexico in early 2012.

[4] However, while the divorce was pending, there were attempts at reconciliation, and Luebbert remained in Mexico and continued to handle certain "business affairs" for Leno. Tr. p. 31. As relevant here, during the summer of 2012 Luebbert was involved in creating Maple Family. He prepared the articles of organization and operating agreement for the company, identifying Corporation Service Company (CSC) as the registered agent in both documents. Luebbert also prepared deeds by which Leno would transfer ownership of her Carmel house from herself to Maple Family. Leno executed all the documents on September 4, 2012.

[5] Later in 2012, Luebbert was involved in preparing the paperwork making CSC the registered agent for Maple Family. On December 13, 2012, Luebbert wrote the following in an email to CSC: "I neglected to sign the agreement you sent in August. I need to take care of this, so if you could please send me a new replacement agreement, I will promptly have it signed and returned to you." Ex. 6. The same day, CSC sent Luebbert the form he had requested and asked if it should "still be using the address in Mexico for all correspondence?" *Id.* Leno signed the form that day, and Luebbert emailed it back to CSC with a message that stated, in part: "My wife, Marie Elizabeth Leno, is the Manager of the LLC and she signed the Agreement. . . . The Zapopan, JAL Mexico address

remains the mailing address of the LLC." *Id.* Leno was not copied on any of these emails.

[6] The next day, December 14, CSC sent a "Welcome to CSC" email to Luebbert (but not Leno). Ex. 7. Under the heading "Confirm Your Information" was the following instruction: "Please review the following information and let us know if changes are required." *Id.* Luebbert's name, phone number, and email address were then listed, with no information for Leno. Luebbert did not tell CSC that the information was incorrect.

[7] Luebbert and Leno failed to reconcile, and the divorce was finalized in June 2013. Luebbert left Mexico in November 2013. On December 10, 2013, he was on the verge of filing his Nebraska lawsuit against Maple Family and Leno—the lawsuit that gave rise to this appeal—when a CSC representative sent him an email about an open invoice on Maple Family's account. Luebbert responded as follows: "Maple Family, LLC is owned and operated by Liz Leno and I have nothing further to do with her LLC. I have been forwarding your e-mails to her. Her e-mail is noted above." Ex. 12. The printed version of the email shows that Luebbert sent a copy to "Liz Leno." *Id.* The same day, the CSC representative responded "Thank you" to Luebbert (but not Leno). Ex. 13. Two days later, however, the same CSC representative sent another unpaid-invoice email to Luebbert (but not Leno). Luebbert responded to CSC with a message directed at Leno: "Liz, Please take care of this. It is for your LLC." Ex. 14. Again, the printed version of the email shows that a copy was sent to "Liz Leno." *Id.* After a few minutes, Luebbert sent Leno (but not CSC)

another message: "Also just so you know, I going [sic] to block all future email messages from CSC as junk mail, so I am going to stop sending you their messages." Ex. 15. Once again, the printed version of the email shows that a copy was sent to "Liz Leno." *Id.*

[8] Five days later, on December 17, 2013, Luebbert filed a lawsuit against Maple Family, and Leno individually, in Nebraska state court. Luebbert alleged, in pertinent part, that:

- he and Leno, just before they got married, "orally agreed that they would establish a new real estate investment partnership which would be capitalized by the Luebbert Trust and Leno[.]"

- he and Leno agreed that Luebbert would sell a house the Luebbert Trust owned in Omaha, that Leno would sell her house in Carmel, and that "the Luebbert Trust and Leno would collectively invest the proceeds therefrom in new income producing real estate investments, the income from which would be shared in accordance with their capital contributions" to the partnership.

- in reliance on the parties' agreement, the Luebbert Trust borrowed against and eventually sold the Omaha house and made the proceeds, along with other cash, available to the partnership for investment purposes, "including the renovation of (i) the Indiana Home, and (ii) the Mexican Properties."

- the Luebbert Trust had invested in excess of $250,000 into the partnership and as a result the Carmel home and the

> Mexican properties had been "substantially renovated to the financial benefit of Leno and Maple Family."

- Leno and Maple Family breached the partnership agreement by (1) spending "a substantial amount of the cash and sale proceeds of the Luebbert Trust" for their own benefit instead of being invested for the benefit of the partnership and (2) disavowing the existence of the partnership and indicating their intent to retain the proceeds of the sale of the Carmel house if such a sale occurs.

Ex. 17. Luebbert requested a judgment against Leno and Maple Family in the amount of $250,357.19.

[9] On December 20, 2013, Luebbert sent the summons and complaint to "Maple Family, LLC c/o Corporation Service Co." at CSC's Indianapolis address via certified mail. Ex. 16. The record does not indicate what action CSC took, if any, after receiving the documents. Luebbert's attorney later told the Nebraska court that he attempted to serve Leno individually via certified mail (he did not say what address he used) but that "it came back unanswered." Ex. 18. Neither Maple Family nor Leno responded to Luebbert's complaint, and Luebbert moved for a default judgment against Maple Family only. The Nebraska court held a hearing on the motion on March 20, 2014. The same day, the court issued a default judgment in favor of Luebbert and against Maple Family in the amount requested by Luebbert—$250,357.19—stating that Maple Family "was properly served with a copy of the Complaint and Summons through its Registered Agent on 12/20/13." Ex. 19.

[10] Nebraska judgment in hand, Luebbert then came to Indiana and, pursuant to the Uniform Enforcement of Foreign Judgments Act, Ind. Code ch. 34-54-11, initiated an action against Maple Family in Hamilton County (where Maple Family owns the house formerly owned by Leno personally). However, when Luebbert asked the court for a writ of execution, Maple Family objected, claiming that the Nebraska judgment is "void." Appellee's App. Vol. II pp. 121-23. Specifically, Maple Family asserted that sending the summons and complaint to CSC was not, under the circumstances, "reasonably calculated" to inform Maple Family of the Nebraska proceeding and that therefore the Nebraska court never acquired personal jurisdiction over Maple Family. *Id.*[1]

[11] The trial court held an evidentiary hearing on the matter over two days in March 2018. Regarding the creation of Maple Family, Leno acknowledged signing the necessary documents but testified that she "didn't want to form an LLC" because she "didn't have a clue what was an LLC" and that Luebbert "ma[d]e" her establish Maple Family. Tr. pp. 141, 154. She testified that Luebbert convinced her to sign the deeds transferring her house to Maple Family by telling her "that everything will go wrong with my house because we were living in Mexico." *Id.* at 141. She added that Luebbert told her that he was "going to take care of the LLC . . . [a]s a good intention." *Id.* at 158.

---

[1] Maple Family also argued that it had no contacts with Nebraska and that the Nebraska court lacked personal jurisdiction over the company for that reason as well. The trial court expressly declined to reach that issue in its order, having already found deficient service of process. Because we affirm the trial court's service-of-process ruling, we likewise do not address Maple Family's contacts, or lack thereof, with Nebraska.

[12]    Regarding CSC, Leno testified that she "never had a relationship" with the company, *id.* at 159, and that Luebbert "was the responsible [sic] with CSC," *id.* at 160.  Leno repeatedly testified that she had no contact with CSC, at least not knowingly.  *Id.* at 140, 174.  She acknowledged that she called CSC in August 2012 but explained, "Mr. Luebbert asked me to call this 1-800 number as a favor for him and asked for a quote. . . . I didn't know who I was contacting." *Id.* at 140-41.  She also acknowledged receiving a follow-up email from CSC but said that she "didn't know what it was for" and that she forwarded it to Mr. Luebbert "because he request me [sic]."  *Id.* at 142.  Leno was asked, "Did [Luebbert] ever tell you that you needed to make sure you were in contact with CSC now that you and he had separated?"  *Id.* at 134.  She answered, "Never." *Id.*  She was asked, "Did CSC send you any of the documents addressed to you?"  *Id.*  She answered, "Never."  *Id.*  She also testified that she "receive[d] documents from CSC addressed to Mr. Luebbert occasionally" but that she did not open them because "[t]hey were to Mr. Luebbert and he always told me never to open anything that was his."  *Id.*

[13]    She testified that she had three email addresses—one that started with "lizleno" and two that started with "iluvulord."  She explained that she had the "lizleno" address set up so that anything from Luebbert would go to spam, that Luebbert knew this and knew to use one of the "iluvulord" addresses if he wanted to get in touch with her, but that he nonetheless used the "lizleno" address when he sent her the emails about CSC (the emails sent to "Liz Leno") in December 2013, days before he filed suit in Nebraska.  When asked specifically about the

email on which Luebbert included her on December 10, 2013—the email that said "Maple Family, LLC is owned and operated by Liz Leno and I have nothing further to do with her LLC. I have been forwarding your emails to her. Her e-mail is noted above."—Leno testified that it was sent to "the Liz Leno e-mail," that it "went into trash," that it "went to s[p]am," that "[Luebbert] knows that," that it "was not in my inbox," and that "I never read that e-mail." *Id.* at 149. She added that Luebbert "knows this e-mail for things like that went to spam" and that "he intended to do this e-mail [sic] because he knew it went to spam." *Id.*[2]

[14] After the hearing, the trial court issued a written order in favor of Maple Family. The court concluded:

> Service upon CSC, as [Maple Family's] registered agent, was not a proper and effective service of process. [Luebbert] established a service of process which was not reasonably calculated to provide [Maple Family] with notice of the Nebraska litigation and in fact was purposely calculated so that [Leno] and/or [Maple Family] would not receive notice of the pending litigation.

Appellant's App. Vol. II p. 19. As such, the court denied Luebbert's request for a writ of execution.

---

[2] Notably, there is evidence in the record that when Luebbert sent Leno emails of a personal nature, he sent them to all three of Leno's addresses. *See* Exs. 8A, 10A, 11A.

Luebbert now appeals.[3]

# Discussion and Decision

Luebbert contends that the trial court erred by finding the Nebraska judgment to be invalid. When an Indiana court is asked to determine the validity of a judgment from another state, it applies the law of that state. *Troxel v. Ward*, 111 N.E.3d 1029, 1033 (Ind. Ct. App. 2018). The principle of Nebraska law at issue here is that service of process is effective if it is "reasonably calculated to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections." *Capital One Bank (USA), N.A. v. Lehmann*, 23 Neb. App. 292, 302, 869 N.W.2d 917, 924 (2015). The gist of Luebbert's appeal is that the trial court misinterpreted this principle. We review questions of law de novo. *State v. Neff*, 117 N.E.3d 1263, 1267 (Ind. 2019).

---

[3] Luebbert has moved to strike extensive passages from Maple Family's brief. With the exception of one completely baseless claim by Maple Family—that Luebbert has "lost his license to practice law in Nebraska," Appellee's Br. p. 22—we have denied Luebbert's motion in a separate order. To the extent Luebbert argues that Maple Family relies on matters that were not admitted into evidence at the March 2018 hearing, his motion is moot; we have restricted our review to the testimony and exhibits admitted into evidence at that hearing.

That said, some observations about Maple Family's brief are in order. First, Maple Family's citations to the appellant's appendix are to a version of the appendix that Luebbert tendered to our clerk's office on January 4, 2019, but that was rejected for filing because of a technical defect. Luebbert filed a corrected appendix on January 11, and that is the appendix that Maple Family should have cited in its brief. Second, Maple Family's citations to the transcript are to a transcript that Luebbert had produced at the trial-court level for purposes of a motion to correct error. A different transcript with different pagination was created for purposes of appeal, and that is the transcript Maple Family should have cited in its brief. These entirely avoidable errors significantly hindered our review of Maple Family's contentions on appeal. We also note that Maple Family's brief includes certain factual assertions that are not supported by any citation at all, including its claim that Luebbert has lost his Nebraska law license. Needless to say, this is a practice that Maple Family's attorneys should avoid in future appeals.

[17] Luebbert argues that the quoted standard "does not require a plaintiff to guarantee actual notice was given but only that the summons and complaint were actually delivered in accord with some permitted service of process procedure." Appellant's Br. p. 18. In other words, Luebbert takes the position that sending the summons and complaint to Maple Family's registered agent via certified mail was, **as a matter of law**, "reasonably calculated to apprise Maple Family of the pendency of the Nebraska Litigation and to afford it the opportunity to present its objections." *Id.* at 20. But that is plainly wrong, as *Lehmann* itself demonstrates.

[18] In *Lehmann*, the court determined that the plaintiff's certified-mail service satisfied the requirements of the relevant service-of-process statute, Nebraska Statute § 25-505.01, but it did not stop there. It stated, "Capital One complied with all of the requirements of § 25-505.01. **The question now is whether the certified mail service was reasonably calculated to apprise Lehmann of the pendency of the action.**" *Lehmann*, 23 Neb. App. at 302, 869 N.W.2d at 924 (emphasis added). The court then went on to analyze whether certified-mail service was sufficient under the particular circumstances of that case. There is no question, then, that a plaintiff's chosen method of service can be declared ineffective even if it is technically permissible under Nebraska's service-of-process statutes.

[19] Alternatively, Luebbert argues that even if the Indiana trial court properly inquired beyond the fact that the summons and complaint were delivered to CSC, Maple Family did not present any evidence that CSC failed to notify it of

the Nebraska filing.  We disagree.  As we already noted, Leno testified repeatedly that she had "no contact" with CSC, and when asked if CSC sent her "any of the documents addressed to you," she answered, "Never."  The only reasonable inference from that testimony is that CSC never notified Maple Family/Leno of the Nebraska lawsuit.

[20]  Of course, the fact that a particular method of service fails to result in notice to a defendant does not necessarily mean that it was not reasonably calculated to do so.  But Luebbert does not actually challenge the sufficiency of the evidence supporting the trial court's ultimate conclusion on that point—that Luebbert's decision to mail the complaint to CSC was not reasonably calculated to put Maple Family on notice of the Nebraska litigation.  And for good reason.  Evidence was presented that (1) the only contact Leno ever had with CSC was done at the direction of Luebbert, (2) Luebbert did not correct CSC when it indicated that it would be using his name, phone number, and email address for Maple Family, (3) Luebbert knew that Leno had set up her "lizleno" email address so that anything from Luebbert would go to spam, but Luebbert nonetheless chose to use that address to send Leno information about CSC, and (4) CSC was still treating Luebbert as its Maple Family contact a few days before he sued Maple Family in Nebraska.[4]  Given this evidence, the trial court

---

[4] In fact, evidence was presented that CSC was still contacting Luebbert in May 2014, after he had already secured the default judgment against Maple Family.

was fully justified in ruling that service on CSC was not reasonably calculated to notify Maple Family of the Nebraska lawsuit.[5]

Affirmed.

Mathias, J., and Crone, J., concur.

---

[5] In his reply brief, Luebbert makes an argument that service on CSC was sufficient even if it was **not** reasonably calculated to put Maple Family on notice. Appellant's Reply Br. pp. 20-23. He waived this argument by failing to include it in his opening brief. *See U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 797 n.5 (Ind. 2000) ("[A]n argument raised for the first time in a reply brief is waived.").